# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LARRY K. ANDERS and NESA ANDERS, | § § § | |
| *Plaintiffs,* | § § | Civil Action No. 4:23-cv-889 |
| v. | § § | Judge Mazzant |
| MIKE RUMFIELD and DAN BARRINGER, | § § § | |
| *Defendants.* | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Collin County Constables Rumfield and Barringer's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) (Dkt. #10). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I.    State Court Origins

On October 5, 2023, Plaintiffs Larry K. Anders ("Larry") and Nesa Anders ("Nesa") (collectively, the "Plaintiffs") filed suit against Defendants CrossFirst Bank ("CrossFirst"), Mike Rumfield ("Rumfield"), and Dan Barringer ("Barringer") (collectively, the "Deputy Constables") in this Court. This federal suit stems from a lawsuit in state court ("State Court Litigation") (Dkt. #1 at p. 1; Dkt. #1 at ¶¶ 4–5). In the State Court Litigation, CrossFirst sued Larry and other individuals in the 429th Judicial District Court of Collin County, Texas ("State Court") on October 22, 2018 (Dkt. #1 at ¶ 11). On June 7, 2021, the State Court entered a final judgment exceeding $4.5 million in favor of CrossFit and against Larry (Dkt. #1 at ¶ 12). CrossFirst did not

receive a judgment against Nesa and she was not a judgment debtor in the judgment (Dkt. #1 at ¶ 12). Dissatisfied with the outcome, Larry appealed the judgment to the Fifth District Court of Appeals at Dallas ("Appeals Court") (Dkt. #1 at ¶ 13). While the case was pending before the Appeals Court, "CrossFit caused a writ of execution to be issued on or [a]bout August 3, 2021, on account of the [j]udgment against Anders that was the subject of the appeal" (Dkt. #1 at ¶ 15). On August 2, 2021, the District Clerk of Collin County, Texas—through her deputy—issued a writ of execution (Dkt. #10-4 at p. 2).

## II.    The Discussion at Rumfield's Office

On August 30, 2021, Larry went to Rumfield's office to be served with the writ of execution after Rumfield contacted him and the two arranged for service at Rumfield's office (Dkt. #1 at ¶ 16). At this meeting, Larry told Rumfield that Larry did not possess any nonexempt property against which the judgment could be levied and attached (*See* Dkt. #1 at ¶¶ 17–18). According to Larry, Rumfield responded that Rumfield was just an officer of the State Court, and that the State Court would determine whether Larry possessed any nonexempt property (Dkt. #1 at ¶ 18). Larry alleges that he believed Rumfield would not take any further action on account of the writ of execution absent a court order "respecting [Plaintiffs'] property and determining that Larry possessed nonexempt property subject to levy and attachment" (Dkt. #1 at ¶ 18). Larry insinuates that Defendants should have, but did not, seek a judicial determination of Larry's valuation or whether Larry possessed any nonexempt property before effectuating the writ of execution (Dkt. #1 at ¶ 19). Larry alleges that Rumfield and CrossFirst should have been aware that the Internal Revenue Service ("IRS") had assessed "more than $7 [m]illion in federal taxes against Plaintiffs" which created "a lien on all of Plaintiffs' property that was senior and superior to [CrossFirst's claims]

2

regardless of whether the [IRS] had filed such lien in the Collin County, Texas, public records" (Dkt. #1 at ¶ 21).

### III.    The Effectuation of the Writ of Execution

On October 7, 2021, Rumfield, dressed as a law enforcement officer, visited Plaintiffs' home with the writ of execution (Dkt. #1 at ¶ 28).[1] Larry was not at home at the time, but Nesa was, and she spoke with Rumfield when he arrived (Dkt. #1 at ¶ 29). Plaintiffs allege that Rumfield made false statements to Nesa so that Rumfield could gain entrance to Plaintiffs' home to "seize and remove Plaintiffs' property" (Dkt. #1 at ¶ 29). Nesa told Rumfield that Larry was not home and told Rumfield that she would prefer that Rumfield return when Larry was present (Dkt. #1 at ¶ 30). Rumfield responded that the State Court ordered him to inventory the property, which was why he was there (Dkt. #1 at ¶ 30). Once Nesa allowed Rumfield to enter the home, however, he explained the execution process and exempt property laws to Nesa (Dkt. #1 at ¶ 35). When Rumfield began looking around, he called CrossFit's counsel and confirmed that CrossFirst had hired moving vans, movers, and storage spaces for Plaintiffs' property (Dkt. #1 at ¶ 38). Rumfield also told CrossFirst's counsel that he believed the value of Plaintiffs' property exceeded $100,000 (Dkt. #1 at ¶ 39). After this call, movers arrived to remove property from Plaintiffs' home.

Rumfield spent more than four hours at Plaintiffs' home seizing and removing property (Dkt. #1 at ¶ 42). Eventually, Nesa informed Larry about the removal of their property causing him to contact his attorneys (Dkt. #1 at ¶ 43). Larry's attorneys spoke with Rumfield by telephone and informed Rumfield that all the property at the home was exempt under Texas exemption laws and

---

[1]  Plaintiffs allege that Rumfield and Barringer did not obtain a warrant to enter or search Plaintiffs' home (Dkt. #1 at ¶¶ 23–24). Plaintiffs also allege that Rumfield and Barringer did not have a warrant or other judicial process to seize Plaintiffs' exempt property (Dkt. #1 at ¶ 26).

that Rumfield should cease his efforts in seizing the property (Dkt. #1 at ¶¶ 43–44). Rumfield responded that he would continue to seize the property unless Larry could obtain a court order directing Rumfield to cease execution of the writ (Dkt. #1 at ¶ 47). Later, Barringer joined Rumfield at the home to assist in the seizure and removal process (Dkt. #1 at ¶ 48). Sometime after Barringer arrived, one of Larry's attorneys arrived on the scene (Dkt. #1 at ¶ 49). Larry's counsel introduced himself to Rumfield and Barringer and stated, among other things, that the removal of the property was improper because the property was exempt under Texas laws and the property was subject to a tax lien by the IRS (Dkt. #1 at ¶¶ 51, 54). Rumfield responded that Larry mentioned a tax lien to him when Larry had gone to the Constable's office, however, CrossFirst's counsel had not found any tax liens so Rumfield believed he could proceed with seizing Plaintiffs' property (Dkt. #1 at ¶ 55).

Despite counsel's efforts to stop the seizure, Rumfield, Barringer, and several moving company employees took property from inside the house and loaded it onto moving trucks (Dkt. #1 at ¶ 53). On October 28, 2021, Rumfield sold the seized property at auction for less than $10,000 (Dkt. #1 at ¶¶ 65–66). In a turn of events, on December 19, 2022, the Appeals Court reversed and vacated the judgment against Larry and remanded the case to the Texas trial court (Dkt. #1 at ¶ 14).

## IV.    The Motion Before the Court

On October 5, 2023, Plaintiffs filed this suit (Dkt. #1). Plaintiffs alleged the following claims: (1) wrongful levy against CrossFirst (Dkt. #1 at ¶¶ 78–81); (2) conversion against each Defendant (Dkt. #1 at ¶¶ 82–88); (3) conspiracy to commit conversion against each Defendant (Dkt. #1 at ¶¶ 82–88); (4) abuse of process against each Defendant (Dkt. #1 at ¶¶ 89–95); (5) violation of civil rights under 42 U.S.C. § 1983 (Dkt. #1 at ¶¶ 96–99); and (6) conspiracy to commit

a violation of civil rights under 42 U.S.C. §1983 (Dkt. #1 at ¶¶ 96–99). Due to these alleged injuries, Plaintiffs seeks relief in the form of attorney's fees as well as punitive and exemplary damages (Dkt. #1 at ¶¶ 100–02). On December 1, 2023, Barringer and Rumfield filed their Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (Dkt. #10). Plaintiffs filed their Response on December 15, 2023 (Dkt. #15). Barringer and Rumfield filed their Reply on December 22, 2023 (Dkt. #19) and Plaintiffs filed their Sur-Reply on December 29, 2023 (Dkt. #23).

On October 28, 2024, Plaintiffs and CrossFirst filed their Joint Stipulation of Partial Dismissal of Certain Claims and Certain Defendants with Prejudice ("Stipulation of Dismissal") (Dkt. #29). The Court granted the Stipulation of Dismissal on October 31, 2024 (Dkt. #30). It dismissed, with prejudice, all claims against CrossFirst and the three conspiracy counts against Barringer and Rumfield: (1) conspiracy to convert, (2) conspiracy to abuse process, and (3) conspiracy to violate civil rights under 42 U.S.C. § 1983 (Dkt. #30 at pp. 1–2). Pursuant to the Stipulation of Dismissal, the only remaining claims before the Court are against the Deputy Constables (Dkt. #30 at pp. 1–2). Thus, the remaining claims are Count 1 (Wrongful Levy), Count 2 (Conversion), and Count 4 (violation of civil rights under 42 U.S.C. § 1983) (Dkt. #30 at pp. 1–2).[2]

---

[2] The Stipulation of Dismissal also notes that Counts 6 and 8 remain live against the Deputy Constables (*See* Dkt. #30 at p. 2). Count 6 is not an independent claim; rather, it is a request for relief in the form of punitive and exemplary damages (*See* Dkt. #1 at ¶ 102). As such, the Court does not list Count 6 among the remaining live claims. *See Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) ("Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action"); *see also Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) (citing *Lanier v. Sallas*, 777 F.2d 321, 325 (5th Cir. 1985) (noting that, under Texas law, an award of punitive damages is not a separate cause of action). Further, there is not a Count 8 listed in Plaintiffs' Complaint (*See* Dkt. #1).

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a district court to dismiss a case for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding whether to dismiss an action for want of jurisdiction, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the non-movant. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant moves to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief in this judicial system. *Lane*, 529 F.3d at 557.

### II.    Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P.

8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The Deputy Constables urge the Court to dismiss the suit for two broad reasons. First, they argue that the Court lacks subject matter jurisdiction to hear the claim pursuant to the *Rooker-Feldman* doctrine ("*Rooker-Feldman*") (Dkt. #10 at p. 1). Second, even if this jurisdictional bar does not apply, the Deputy Constables assert they are entitled to "a variety of immunities, including [q]uasi-judicial [i]mmunity, [q]ualified [i]mmunity, and/or [o]fficial [i]mmunity" (Dkt. #10 at p. 1). Third, the Deputy Constables also assert that the state law claims should be dismissed "pursuant to the election of remedies provision contained in Texas Civil Practice & Remedies Code Section 101.106" (Dkt. #10 at p. 1). The Court addresses these arguments below.

## I.    Subject Matter Jurisdiction

The Court has subject matter jurisdiction because *Rooker-Feldman* is inapplicable. "Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 384 (5th Cir. 2022) (citations omitted) (cleaned up). "The doctrine is jurisdictional." *Id.* "In addition to the precise claims

presented to the state court, *Rooker-Feldman* prohibits federal court review of claims that are inextricably intertwined with a state court decision." *Id.* (citation omitted) (cleaned up). *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman*, however, is a narrow doctrine and it "does not prohibit a plaintiff from presenting some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). As such, "[o]ne hallmark of the *Rooker-Feldman* inquiry is what the federal court is being asked to review and reject." *Id.*

Here, the Deputy Constables argue that *Rooker-Feldman* applies because Plaintiffs are collaterally attacking the State Court judgment and any claims arising from the judgment are precluded by the doctrine (Dkt. #10 at pp. 9–11). Thus, according to Deputy Constables, the Court lacks subject matter jurisdiction. That is wrong. Plaintiffs are not attempting to have the Court "'review, modify, or nullify' a final order of a state court" like in the cases the Deputy Constables cite to in their Motion (Dkt. #10 at pp. 9–11).[3] *Mosely v. Bowie Cnty.*, 275 F. App'x 327, 329 (5th Cir. 2008). Rather, Plaintiffs claim that the Deputy Constables "violated their constitutional rights in the effort to enforce the" writ of execution. *Id.* (citing *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir.

---

[3] These cases are easily distinguishable. *Hale v. Harney*, 786 F.2d 688 (5th Cir. 1986) (finding no federal jurisdiction to modify divorce decree); *Ladowski v. Atty Gen. of Texas*, No. CIVA H-05-1428, 2006 WL 2479101 (S.D. Tex. Aug. 25, 2006) (dismissing § 1983 claim in federal court that attempted to block enforcement of child-support order); *Flores v. Citizens State Bank of Roma*, 132 F.3d 1457 (5th Cir. 1997) (finding no federal jurisdiction to review state court foreclosure and seizure of property related to writ of execution when Plaintiffs argued the judgment was void); *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334 (5th Cir. 2011) (finding no federal jurisdiction to attack state court foreclosure judgment); *Santoro v. Cnty. of Collin*, 4:18-CV-660-ALM-CAN, 2019 WL 5692190 (E.D. Tex. Aug. 16, 2019) (finding no federal jurisdiction to attack judgment related to foreclosure of property due to tax lien).

2000)). Accordingly, the Court is being asked to review the way the Deputy Constables effectuated the writ of execution, not the validity or substance of the State Court judgment. *See Truong*, 717 F.3d at 382. *Rooker-Feldman* does not bar these kinds of suits. *See Mosely*, 275 F. App'x at 329. Thus, the Deputy Constables' Rule 12(b)(1) Motion must be denied and the Court will next address the merits of the Rule 12(b)(6) Motion.

## II.    Count 1—Wrongful Levy

On Count 1, Texas law grants immunity to the Deputy Constables. In Count 1 of their Complaint, Plaintiffs alleged a wrongful levy claim against the Deputy Constables in their individual capacities (*See* Dkt. #1 at pp. 1–3, 14–15; Dkt. #30 at p. 2). The Texas Tort Claims Act ("TTCA"), however, does not permit this suit against the Deputy Constables in their individual capacities. The relevant portion of the TTCA states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

"In *Franka v. Velasquez*, the Texas Supreme Court clarified § 101.106(f)'s second-prong, regarding whether suit 'could have been brought under this chapter against the governmental unit.'" *Herrera v. Aguilar*, No. SA-10-CV-569-DAE, 2013 WL 4784125, *4 (W.D. Tex. Sept. 6, 2013) (quoting 332 S.W.3d 367, 369 (Tex. 2011)). The Eastern District of Texas has further explained that "[u]nder the *Franka* rule, all tort claims, including intentional torts, 'could have been brought' against the governmental unit, regardless of whether the governmental unit's immunity from suit is expressly waived by the TTCA for those claims." *Bordges v. City of Flower Mound*, No.

4:11-CV-310, 2011 WL 5600339, *5 (E.D. Tex. Oct. 14, 2011) (quoting *Franka*, 332 S.W.3d at 385). This is because § 101.106(f) "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer." *Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019). Here, the Deputy Constables were acting as governmental employees when they discharged the writ of execution so the wrongful levy claim should have been raised against their government employer (*See* Dkt. #1). *See also id.* at 401 ("Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort."). As such, the wrongful levy claim cannot proceed against the Deputy Constables because they are immune from suit. *See Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 154 (5th Cir. 2017) (citing *McFadden v. Olesky*, 517 S.W.3d 287, 294–95, 298 (Tex. App.—Austin 2017, pet. denied)). Thus, the wrongful levy claim in Count 1 is dismissed with prejudice (Dkt. #1 at pp. 14–15).

## III.    Count 2—Conversion

On Count 2, Texas law also grants immunity to the Deputy Constables. In Count 2, Plaintiffs alleged a claim of conversion against the Deputy Constables (Dkt. #1 at ¶¶ 82–88). In their Response to this Motion, however, Plaintiffs do not dispute that the Deputy Constables enjoy immunity from the conversion claim under Texas law (*See* Dkt. #15 at p. 15). Plaintiffs aver that they do not contest dismissal of the conversion claim against the Deputy Constables (Dkt. #15 at p. 15). Accordingly, the Court dismisses the conversion claim in Count 2 with prejudice.

## IV.    Count 4—Section 1983 and Qualified Immunity

### A.    Qualified Immunity Generally

Qualified immunity is a defense available to government officials sued for constitutional violations pursuant to Section 1983. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).

Police officers are government officials entitled to assert the defense of qualified immunity. *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). Qualified immunity "protects government officials acting within their authority from individual liability 'when their actions could reasonably have been believed to be legal.'" *Sweetin v. City of Texas City*, 48 F.4th 387, 391 (5th Cir. 2022) (quoting *Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011)). To be entitled to qualified immunity, the government official "must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). "An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Id.* (quoting *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). Courts look to state law to determine whether an official was acting within the scope of his discretionary authority. *Id.* at 318–19.

At the motion to dismiss stage, the Court must "carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). It remains, however, "'plaintiff's burden to demonstrate that qualified immunity is inappropriate' even at the motion to dismiss stage." *Guerra v. Castillo*, 82 F.4th 278, 290 (5th Cir. 2023) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)). Thus, "[w]hen confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Guerra*, 82 F.4th at 285) (cleaned up).

To defeat qualified immunity, the plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the

challenged conduct. *Morgan*, 659 F.3d at 371. "For a right to be clearly established, 'a case directly on point' is not required, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Diaz v. Cantu*, 123 F.4th 736, 747–48 (5th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 748 (citation omitted) (cleaned up). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). The Court may consider the second analytical prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

With respect to the second prong, a defendant is entitled to qualified immunity when his conduct was objectively reasonable in light of clearly established law at the time of the conduct at issue. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) ("A police officer is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'") (citations omitted). "The United States Supreme Court has repeatedly recognized the longstanding principle that clearly established law should not be defined at a high level of generality." *M.F. v. Carroll Indep. Sch. Dist.*, No. 4:23-CV-1102-O, 2025 WL 697683, at *4 (N.D. Tex. Mar. 4, 2025) (internal quotations omitted) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Instead, the Supreme Court has stressed the demanding nature of the clearly established law standard and the level of specificity required. *Id.* (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)).

**B.** **The Section 1983 Claim Linked to the Texas Constitution**

In Count 4, Plaintiffs' Complaint alleged that Plaintiffs were deprived of their "rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution" (Dkt. #1 at ¶ 97). There is a problem, though. "It is well established that Section 1983 cannot be used to bring a claim for violation of state law or [state] constitutional right." *Williams v. Dallas Cnty. Cmty. College Dist.*, No. 3:14-CV-3990-N, 2015 WL 13742548, at *4 (N.D. Tex. Feb. 4, 2015); *see also Bush v. Viterna*, 795 F.2d 1203, 1208–09 (5th Cir. 1986) (noting that Section 1983 "may not be used to bootstrap alleged violations of state law into federal claims"). As such, the allegation that Plaintiffs were deprived of their rights under Article I, Sec. 9 of the Texas Constitution cannot be pursued through Section 1983 and the claim is dismissed with prejudice.

**C.** **Discretionary Authority**

The Deputy Constables were acting under their discretionary authority. The Court must examine Texas law to determine whether the Deputy Constables were acting pursuant to their discretionary authority, if not, then they may not assert the qualified immunity defense. *See Cherry Knoll, L.L.C.*, 922 F.3d at 318–19. Texas law does not clearly indicate whether the effectuation of a writ of execution is a discretionary or ministerial act. But it does provide guidance on how to discern whether an act falls into one category or the other. "If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994) (citing *Wyse v. Dep't of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.)). Further, an "act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the

exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). A writ of execution is a mixed bag: it requires an officer to exercise ministerial and discretionary authority. *See Hernandez v. Sommers*, 587 S.W.3d 461, 470 (Tex. App.—El Paso 2019, pet. denied) ("While [the constable] did not have discretion to refuse to execute the writ, the manner in which she executed the writ involved her personal judgment and discretion."); *Jamison v. Nat't Loan Investors*, L.P., 4 S.W.3d 465, 469 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (citing *Merritt v. Harris Cnty.*, 775 S.W.2d 17, 24 (Tex. App.—Houston [14th Dist.] 1989, writ denied) ("holding that constables, in executing writs of restitution, possess only a limited range of discretion in executing a writ and their power to make and enforce policy in this area is constrained by the courts, the Constitution, and the Legislature")); *see also Gabriel v. Outlaw*, No. 05-18-503-CV, 2019 WL 1760324, at *1 (Tex. App.—Dallas Apr. 22, 2019, no pet.) (mem. op.) (sheriff had ministerial duty to sign deed).

Here, the Deputy Constables had ministerial duties to effectuate the writ of execution on Plaintiffs and to ensure that the seized property was sold at auction. *See* Tex. R. Civ. P. 637 (Levy of Execution), Tex. R. Civ. P. 649 (Sale of Personal Property); *Jefferson Cnty. Constables Ass'n v. Jefferson Cnty.*, 512 S.W.3d 434, 440 (Tex. App.—Corpus Christi 2016), *aff'd*, 546 S.W.3d 661 (Tex. 2018) ("The office of sheriff and constable each have the duty to execute all process and precepts directed to their office by legal authority."); *Bowles v. Yeganeh*, 84 S.W.3d 252, 255 (Tex. App.—Dallas 2002, no pet.) ("The deputies, being in possession of a legal writ of execution, had a duty to hold a sheriff's sale."). However, as the Court noted above, the issue here is the way the Deputy Constables implemented the writ of execution. *See supra* at 8–10. The facts indicate that the way they implemented the writ "involve[d] personal deliberation, decision and judgment." *City of*

*Lancaster*, 883 S.W.2d at 654. Instead, the implementation involved discretion. First, the writ of execution does not indicate a specific date upon which it must be effectuated (*See* Dkt. #10-4 at p. 1). Rather, it provides that the writ must be returned executed within 90 days from August 2, 2021 (*See* Dkt. #10-4 at pp. 1–2). This flexibility within the 90-day period requires the Deputy Constables to deliberate and make strategic decisions about when to effectuate the writ to ensure they can seize the necessary property as well as ensure that the judgment creditor is able to remove the seized items (*See* Dkt. #10-4; Dkt. #10-7). *See City of Lancaster*, 883 S.W.2d at 654. Second, Rumfield exercised discretionary authority when he called CrossFirst's counsel and informed them that he had no doubt Plaintiffs' property exceeded $100,000 (Dkt. #1 at ¶ 39). The estimation of the value required "personal deliberation, decision and judgment," and so did the decision to call CrossFirst to inform them of this development. *City of Lancaster*, 883 S.W.2d at 654. Neither of these actions were defined in the writ of execution with "sufficient certainty that nothing [was] left to the exercise of discretion." *Anderson*, 806 S.W.2d at 793. Thus, the Deputy Constables have met their burden "of establishing that the challenged conduct was within the scope of their discretionary authority," and the burden now shifts to Plaintiffs to rebut the qualified immunity defense. *Cherry Knoll, L.L.C.*, 922 F.3d at 318.

### D.    The Section 1983 Claims Linked to the Fourth Amendment

The Deputy Constables are entitled to qualified immunity on the Section 1983 claims linked to the Fourth Amendment. To defeat qualified immunity, Plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan*, 659 F.3d 359, 371 (5th Cir. 2011). Here, Plaintiffs' pleaded facts, which the Court accepts as true at the motion to dismiss stage, do not defeat the claim of immunity. *See Santander*, 133 F.4th at 478. Plaintiffs allege that the Deputy Constables violated the

Fourth Amendment because Rumfield and Barringer did not obtain a warrant to enter Plaintiffs' home, they did not obtain a warrant to search Plaintiffs' home, and they did not have a warrant or other judicial process to seize Plaintiffs' exempt property (Dkt. #1 at ¶¶ 24–26; Dkt. #15 at pp. 10–15). First, Plaintiffs' argument—that the Deputy Constables violated the Fourth Amendment because they lacked a warrant to search and enter Plaintiffs' home—is unpersuasive because Nesa allowed Rumfield to enter (*See* Dkt. #1 at ¶¶ 32–35; Dkt. #15 at pp. 10–15). Plaintiffs counter by arguing that Rumfield lied and deceived Nesa to gain entrance into the residence (Dkt. #1 ¶¶ 29–38). This does not matter. The Fifth Circuit holds that "[a]s long as police officers do not use force, they may attempt to gain entry to a dwelling by deception" without violating the Fourth Amendment. *Linbrugger v. Abercia*, 363 F.3d 537, 541 (5th Cir. 2004) (citing *Lewis v. United States*, 385 U.S. 206, 211–12 (1966)). Accordingly, Plaintiffs fail to carry their burden of establishing a violation of the Fourth Amendment.

Plaintiffs' other argument—that the Deputy Constables violated the Fourth Amendment because they did not have a warrant or other judicial process to seize Plaintiffs' exempt property—fares no better (Dkt. #1 at ¶¶ 24–26). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Hernandez*, 380 F.3d at 879. This is because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) (internal quotations and citation omitted). Here, even if Plaintiffs proved that the Deputy Constables seized exempt property, the mistake was objectively reasonable. *Id.* The Deputy Constables were at the property to effectuate the writ of execution against the judgment debtor, Larry (*See generally* Dkt. #1). Under Texas law, the "office of sheriff

17

and constable each have the duty to execute all process and precepts directed to their office by legal authority." *Jefferson Cnty. Constables Ass'n*, 512 S.W.3d at 440. To discharge that duty, the Deputy Constables "were required to levy on the writ of execution that was directed to them by legal authority, whether the property was owned and possessed by the judgment debtor or another, and even though the levy might involve litigation." *Richardson v. Parker*, 903 S.W.2d 801, 805 (Tex. App.—Dallas 1995, no writ) (citing *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 433 (Tex. 1970)); *see also Bowles* 84 S.W.3d at 255 ("The deputies, being in possession of a legal writ of execution, had a duty to hold a sheriff's sale.").

Given Texas law, the Court finds that the Deputy Constables' actions were objectively reasonable. First, exempt and nonexempt property is generally intermixed, leading to a likelihood that some of property might be improperly seized. Given this reality, the Deputy Constables' removal of exempt items is not a violation that overcomes qualified immunity. When effectuating a writ of execution, officers must enter a property with little information regarding what they might encounter and without perfect knowledge of the property they will seize (*See* Dkt. #10-4 at p. 1 (generally commanding the Deputy Constables to seize Larry's goods and chattels)). Here, when Rumfield arrived on the scene, he looked around, discerned whether there was nonexempt property, and then, according to Plaintiffs, erroneously seized exempt property (*See* Dkt. #1 at ¶¶ 36–62). This alleged error, however, is objectively reasonable. Qualified immunity is designed to protect public officials except "the plainly incompetent or those who knowingly violate the law." *White*, 580 U.S. at 79 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). None of Plaintiffs' alleged facts, even if true, demonstrate that the Deputy Constables were incompetent or knowingly violated the law. Rather, the Deputy Constables made reasonable mistakes in judgment, in good

faith, while trying to comply with a facially valid writ of execution. Several facts demonstrate this point. Upon entering the home, Rumfield explained the execution process and exempt property laws to Nesa (Dkt. #1 at ¶ 35). Additionally, Rumfield also spoke with Plaintiffs' counsel over the phone, explained the situation, and informed counsel that he would continue executing the writ, unless a court order directed him to cease his efforts (*See* Dkt. #1 at ¶¶ 43–47). The Deputy Constables clearly communicated with Plaintiffs' counsel and explained the law. Nothing indicates that the Deputy Constables were attempting to knowingly violate the law or skirt the requirements when executing the writ. Thus, the Court finds that they acted in good faith while performing their duties, albeit while making mistakes in judgment.

Second, Plaintiffs aver that once they informed the Deputy Constables that all of their property was exempt, the Deputy Constables should have ceased executing the writ (Dkt. #15 at p. 2 n.1). This argument is unpersuasive since every judgment debtor is likely to claim their property is exempt because they do not want to forfeit their property. Plaintiffs' argument that the Deputy Constables should have ceased execution is also undercut by Plaintiffs' invocation of Section 34.071 of the Texas Civil Practice and Remedies Code (Dkt. #1 at ¶ 75). This provision clarifies that an officer receiving a writ of execution does not have a duty to "determine whether property belonging to the judgment debtor is exempt property that is not subject to levy." TEX. CIV. PRAC. & REM. CODE § 34.071. Further, the Deputy Constables did not have a duty to "determine whether the property belongs to [the] judgment debtor." TEX. CIV. PRAC. & REM. CODE § 34.071. Thus, Plaintiffs' contention that some of the seized property belonged to Nesa and not Larry is unavailing (Dkt. #1 at ¶ 12; Dkt. #15 at p. 2). In fact, if the Deputy Constables did not effectuate the writ of execution, they could have subjected themselves to civil liability by the judgment creditor. *See* TEX.

19

CIV. PRAC. & REM. CODE § 34.065. Examining the quasi-judicial immunity doctrine is instructive. In the quasi-judicial immunity context, the Fifth Circuit expressed concern over requiring government officials to make the Hobson's choice between disobeying a facially valid court order they have a duty to enforce, or be haled into court to answer for damages, because this result would be untenable. *See Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996). This rationale carries over to the case at bar. It would be untenable if the Deputy Constables were forced to choose between executing the writ and facing liability from the judgment debtor *or* refusing to execute the writ and facing liability from the judgment creditor. *See Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)) ("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'"). Accoridngly, the decision to seize Plaintiffs' property was objectively reasonable and the Deputy Constables are entitled to qualified immunity on these Section 1983 claims. Thus, the Court dismisses these claims with prejudice.

### E.    The Section 1983 Claims Linked to the Fourteenth Amendment

The Deputy Constables are entitled to qualified immunity on the Section 1983 claims linked to the Fourteenth Amendment because Plaintiffs fail to prove that the law was clearly established at the time of the alleged constitutional violations. Once more, to defeat qualified immunity, Plaintiffs must show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan*, 659 F.3d at 371. The Court may consider the second analytical prong first. *See Pasco*, 566 F.3d at 579. Additionally, "[f]or a right to be clearly established, a case directly on point is not required, but existing precedent must have placed the statutory or constitutional question beyond debate." *Diaz*, 123 F.4th at 747–48 (citation omitted) (cleaned up). The Fifth Circuit and Supreme Court continually

20

reiterate that clearly established law should not be defined at a high level of generality. *White*, 580 U.S. at 79. Again, Plaintiffs' pleaded facts, which the Court accepts as true at the motion to dismiss stage, do not defeat the claim of immunity. *See Santander*, 133 F.4th at 478. Here, Plaintiffs allege that the Deputy Constables "did not execute the writ of execution in accordance with and as provided by Texas law" (Dkt. #15 at p. 13). Existing precedent, however, does not place this constitutional and statutory question beyond debate. The Court cannot locate a case holding that a writ of execution not performed in accordance with Texas law is a violation of the Fourteenth Amendment. In reality, Plaintiffs contend that by violating Texas procedural law, the Deputy Constables violated Plaintiffs' Fourteenth Amendment rights. The Supreme Court, however, precludes courts from defining clearly established law at this high level of generality, "[o]therwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." *White*, 580 U.S. at 79 (internal quotations and citation omitted). Plaintiffs attempt to do so here, but the qualified immunity doctrine does not permit this. Consequently, Plaintiffs cannot prove that the Deputy Constables violated clearly established law. Thus, the Court dismisses these Section 1983 claims with prejudice.[4]

---

[4]  Plaintiffs requested that the Court grant them leave to amend their Complaint (Dkt. #15 at p. 16). The Court will not do so because any amendment would be futile. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003); *see also Jackson v. Great American Ins. Co.*, No. 23-CV-4304, 2023 WL 8805659, at *1 n.1 (E.D. La. Dec. 20, 2023) (quoting *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5t Cir. 2022) ("An amendment **would be futile** if even the '**amended** complaint would fail to state a claim upon which relief could be granted.'")).

## CONCLUSION

It is therefore **ORDERED** that Collin County Constables Rumfield and Barringer's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) (Dkt. #10) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiffs' remaining claims against Defendants Mike Rumfield and Dan Barringer are hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

 **SIGNED this 21st day of May, 2025.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE